**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UBS FINANCIAL SERVICES INC.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-2502 KHV/DJW |
| | ) | |
| **CARLA C. INGRAHAM,** | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CARLA INGRAHAM'S**
**MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE TO STAY THIS PROCEEDING**

**I.   NATURE OF THIS MATTER; QUESTIONS PRESENTED**

This is a Declaratory Judgment action, whereby a putative defendant filed a preemptive action in federal court, seeking a federal court "declaration" of its non-liability for the putative plaintiff's claims arising solely under Missouri's statutory anti-discrimination  law. ("MHRA"). The questions presented are as follows:

- Whether this Court should decline to entertain this Declaratory Judgment lawsuit because it poses a threat to the injured party's legitimate right to adjudicate state-law-based claims in state court, under the time frame and in the manner allowed under Missouri state law.

- Whether this Court should dismiss or stay this action, because it is based exclusively on state law claims, and because the state court can satisfactorily protect and adjudicate the rights and liabilities of all parties.

- Whether this Court should defer to the associated state court lawsuit, because all unlawful employment practices and all other occurrences underlying this action and the pending state court action were committed within Jackson County, Missouri.  Nothing occurred in Kansas.

- Whether this Court should abstain under the Supreme Court's *Brillhardt* doctrine — followed in the 10th Circuit and this District — that it would be "uneconomical as well as vexatious for a federal court to proceed in a Declaratory Judgment suit where another suit is pending in a state court presenting the same issues, not

governed by federal law, between the same parties."

See **_Brillhardt v. Excess Insurance Co. of America_**, 316 U.S. 491, 495 (1942); **_Wilton v. Seven Falls Co._**, 515 U.S. 277, 282 (1995).  (Same).

Because this is a fact-intensive state law controversy, and because it is quite obvious UBS Financial filed suit in anticipation of Carla Ingraham's imminent suit in Missouri, this Court should decline to entertain the Declaratory Judgment action for the same reasons it did so in **_Buchanan v. Greene_**, 1998 WL 184448 (D. Kan. 1998):

> To compel plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tortfeasor [or alleged discriminators] would be a perversion of a Declaratory Judgment Act.

**_Buchanan_**, at *3.  This Court should dismiss or stay because UBS "is using the action for procedural fencing," and to obtain "back-door removal" in a state-based case where jurisdiction is lodged in Missouri state court.  **_Buchanan_**, **_supra_**;  **_St. Paul Fire & Marine Insurance Co. v. Runyon_**, 53 F.3d 1167 (10th Cir. 1995).

## II.   STATEMENT OF FACTS

1.      Ingraham worked for UBS Financial ("UBS") from 1986 until her termination July 1, 2009.  She earned the title of Senior Registered "Client Service Associate" ("CSA"). Ingraham's duties included assisting her broker's clients, servicing and growing her broker's business, processing equity and fixed income trade requests for retail and institutional clients, planning and preparing client review presentations in addition to administrative duties.  (Ex. 1, ¶ 13).[1]   Ingraham received high marks for her work during her many years at UBS.  (Id.).

2.      In January, 2003, Ingraham began working for Jay DeGoler (a stockbroker and/or

---

[1]  Unless otherwise indicated, various facts are supported by Plaintiff's Jackson County, Missouri Petition, Case No. 0916-CV36471.  (Exhibit 1).

First Vice President of Investments for UBS in Kansas City).  (<u>Id</u>. at ¶ 3; ¶ 14).

  3. Thereafter, DeGoler began sexually harassing Ingraham.  He referred to her as his "work wife"; he talked about his waning sex life with his wife; he told Ingraham his wife would "do handstands" if another woman paid attention to him and that he had "better get laid" on a certain weekend.  (<u>Id</u>. at ¶ 15). DeGoler repeatedly told Ingraham about his hairdresser's large breast size; repeatedly made inappropriate comments about Ingraham's breast size; made inappropriate comments to Ingraham about CSA Angela Lopez; referred to Ingraham's rubber fingertip as her "French Tickler"; called Ingraham "Hoch" (the chauffeur played by Morgan Freeman in "Driving Miss Daisy"), and repeatedly called Ingraham into his office to view sexually offensive e-mails on his computer.  (<u>Id</u>.).

  4. In October 2007, in DeGoler's office with the door shut, DeGoler looked on as Art Perry simulated pornographic movie sex acts in front of several witnesses, including Ingraham. (<u>Id</u>. at ¶ 21).

  5. DeGoler repeatedly stood in front of Ingraham's desk and adjusted his pants zipper and repeatedly talked about the size of his genitals.  (<u>Id.</u> at ¶ 17). On one occasion, DeGoler announced to the office that Ingraham "would be giving massages in the nude in his office."  (<u>Id</u>.). On October 31, 2008, DeGoler repeatedly called Ingraham's home telephone (from his cell phone), and would not speak when Ingraham or her husband picked up the phone. (<u>Id</u>. at ¶ 18).

  6. DeGoler asked Ingraham what sexual positions she liked and with whom in the office she would sleep.  (<u>Id</u>. at 20).  He asked if she would sleep with her former boss "for a million dollars."  (<u>Id</u>.).  He asked her about her sexual fantasies.  He asked her if she gives "blow jobs" and if she swallows semen.  (<u>Id</u>.).

7.      On September 22, 2008, DeGoler printed and placed on Ingraham's desk an article titled, "Fox Sexpert:  The Vibrator, What's All the Buzz About?"  (Id. at ¶ 23).  This article described how a woman should bring herself to orgasm with a vibrator.  DeGoler repeatedly told Ingraham, at a UBS client appreciation dinner,  "You need to go out to the parking lot and give one of the clients (name withheld) a blow job and swallow."  (Id. at ¶ 25).

8.      On December 11, 2008, DeGoler called Ingraham into his office.  (Id. at ¶ 27).  He verbally abused her by screaming at her behind his closed office door, allowing her no escape.  He berated her for leaving at 3:00 p.m. for an appointment, and he accused her of taking advantage of him. (Id.).

**Ingraham Makes Internal Complaints About DeGoler, Followed By MHRA Charges**

9.      On December 16, 2008, Ingraham reported DeGoler's misbehavior to a UBS manager and the local Deputy manager. (Id. at 28).  On December 19, 2008, DeGoler blamed Ingraham for "making him blow up."  (Id. at 29).  When Ingraham objected, DeGoler removed her from his accounts —  essentially firing her. (Id.).

10.      On December 22, 2008, Ingraham filed a more formal internal complaint, using the designated UBS hotline.  (Id., ¶ 31).  UBS launched a so-called "investigation."[2]

11.      On December 29, 2008, Ingraham filed her initial Charge of Discrimination with the Missouri Human Rights Commission.  (Id., ¶ 6; also see Ex. 2).  Such Charges were amended in June 2009, and July 2009, and duly received by UBS.  (DJ Complt., ¶¶ 11, 14, & 15).

12.      Thereafter, Ingraham continued to work for UBS — but was assigned other brokers.  After Ingraham's internal complaints and MHRA Charges, DeGoler stayed away from

_____

[2]  The DJ Complaint admits Ingraham's hotline complaint and UBS's resultant "investigation."  (DJ Complaint, ¶¶ 9-10).

Ingraham for awhile.  But his behavior changed again in April 2009, when he began inappropriately staring at Ingraham through other broker's doorways and windows, walking in front of Ingraham's desk to get close to her and glare at her.  (Id. at ¶ 36).

13.     In April 2009, Ingraham did not receive her paycheck for one pay period.  UBS asked Ingraham to move her desk, and was assigned to work the switchboard twice as much as less senior CSAs.  (Id. at ¶ 37, 39).

### DeGoler's Renewed Harassment Makes Ingraham Physically Sick

14.     At the end of April 2009, Ingraham became physical ill after being repeatedly stalked and glared at by DeGoler for an entire week.  (Ex. 1, ¶ 40).  After Ingraham's attorney requested that UBS stop DeGoler's continued harassment of Ingraham, UBS placed Ingraham on administrative leave to "investigate" her claims of retaliation.  (Id. at ¶ 41).  The investigation "turned up nothing" according to UBS.  UBS declined to move Ingraham away from DeGoler, even after her attorney requested the move and they (UBS) had offered it.  (Id. at ¶ 42).

15.     While Ingraham was out on leave, UBS's corporate counsel asked for Ingraham to participate in outside mediation.  She agreed.  The parties chose John Phillips, and even scheduled a mediation date  — but UBS backed out two (2) days before scheduled mediation.  Ingraham was "expected" back at work the next Monday.  And Ingraham reported to work as directed.  (Id. at ¶ 43).

### Retaliation Escalates Immediately Upon Ingraham's Return From Leave

16.     On May 18, 2009, Ingraham returned from administrative leave.  Tara Krouse hauled Ingraham into meetings twice that day.  In the first meeting, Krouse, with Deputy Branch Manager Ed Carroll present, told Ingraham that two (2) of her four (4) brokers were being reassigned to DeGoler's assistant — which resulted in another significant loss of compensation

to Ingraham — and that Ingraham would not be given any new brokers to replace them or the lost income.  (Id. at ¶ 43).  Later that same day, Krouse, along with Brokers John Spangler (DeGoler's college friend from the University of Kansas) and Janet Groves (another college friend of  DeGoler's from the University of Kansas) refused to pay any share of commissions to Ingraham after she returned, because they were told "we should not pay you."  (Id.).

17.     On May 19, 2009, UBS Market Area Manager issued a new "branch" policy restricting family members in the office.  (Id. at ¶ 44). This was in direct reaction to Ingraham's husband having visited her the previous day to take her to lunch.

18.     On May 21, 2009, UBS Managers called Ingraham to their office and interrogated Ingraham about some beer found in the filing cabinets near an area where Ingraham had not worked for over five months, and asked if it belonged to Ingraham.  (Id. at ¶ 45).  No one else was called in like this, and asked about the beer.

19.     On May 22, 2009, a broker yelled at Ingraham in front of other employees, making false accusations about time away from her desk.  (Id. at ¶ 46).

20.     On May 28, 2009, Ingraham was again summoned to her managers' office, with Theresea Leddy from UBS Human Resources in Weehawken, NJ present via telephone, for questioning about camera usage, ending with the directive that Ingraham could not bring her camera to the office despite others being allowed do so.  (Id. at ¶ 47).

21.     On June 5, 2009, Ingraham was again summoned her managers' office, also present was UBS Operations Manager Erin Murphy.  (Id. at ¶ 48).  Ingraham was told she could not have her cell phone ringer on and was told not to text at work, even though there was no company policy regarding cell phone ringers or texting and other employees were allowed to keep their cell phone ringers on and could text from work.  (Id.).

22.     On June 19, 2009, Ingraham was again summoned to her managers' office.  Also present was Deputy Manager Ed Carroll, and via telephone, Gaye Thurston, from UBS Human Resources in Weehawken, NJ.   (Id. at ¶ 49).  Ingraham was questioned if she had a camera pen, and Ingraham was subjected to a desk and purse search in front of other employees.  (Id.).

23.     On July 1, 2009, UBS terminated Ingraham.  (Id. at ¶ 51). This occurred one week after UBS acknowledged receipt of Ingraham's Amended Charge of Discrimination filed on June 19, 2009.  (Id. at ¶ 6).  Ingraham amended her Charges again on July 29, 2009 and August 18, 2009.  (See MHRC Charges, Ex. 2).

### UBS Was Fully Aware That Ingraham Intended To Sue Under The MHRA

24.     On June 24, 2009,  in-house counsel for UBS, Judy Laudati, sent counsel for Ingraham, Dennis Egan, a letter explaining that she was in receipt of Ingraham's Amended Charge of Discrimination filed with the MHRC.  (See Exhibit 3).

25.     On July 2, 2009, Mr. Egan sent a letter to newly-hired out-side counsel for UBS, Perry Brandt, who had asked to "buy lunch" for Mr. Egan to talk about the case.  Mr. Egan's letter makes clear that Ingraham would sue in Missouri State Court:

> "Perry, you and I have had some cases over the years.  But because **this will be a Missouri Human Rights Action in Missouri State Court,** I forewarn you that I consider Carla Ingraham's case to be one of the most serious cases I have had the pleasure of handling."
> (bold added).

Also attached to Egan's letter were Ingraham's recently Amended Charge of Discrimination, and other correspondence.  (See Exhibit 4).

26.     On July 9, 2009, Mr. Egan sent a letter to in-house counsel Ms. Laudati, explaining, "We intend to vigorously proceed with these charges, and litigation, once we receive the Right to Sue letters.  (See Exhibit 5).

27.     On July 10, 2009, Mr. Egan and Mr. Brandt met for a breakfast meeting in which Mr. Egan (again) informed Mr. Brandt that Ingraham would file her Petition in Missouri State Court under the MHRA.

28.     On July 16, 2009, Mr. Brandt sent a follow up letter to Mr. Egan, memorializing their previous meeting, and further discussing Ingraham's allegations of discrimination.

29.     On August 12, 20009, Perry Brandt wrote a detailed letter to Missouri Human Rights Commission investigator Rebecca Donnelly, hotly disputing Ms. Ingraham's various allegations then under investigation by the Missouri Commission.  (Ex. 6).

30.     On September 22, 2009, Ingraham received her Notice of Right to Sue from the MHRC.  (Ex. 7, Right to Sue Notice).

31.     Two (2) days later, on September 24, 2009, and despite full knowledge that Ingraham would be filing her MHRA claims in Missouri State Court, UBS Financial filed this preemptive, anticipatory Declaratory action before Ingraham could file her state court petition.

32.     When UBS filed its DJ Complaint, Ingraham had not even received her Notice of Right to Sue from the EEOC.  The EEOC Right to Sue Notice was not even mailed out until September 29, 2009.   Ingraham does not intend to file federally-based claims.

33.     On November 16, 2009, and well within the 90-day time limit set forth in the MHRA, Ingraham filed her Petition in the Circuit Court of Jackson County, Missouri (Case No. 0916-CV36471) alleging three counts:  Gender Discrimination, Sexual Harassment and Retaliation under the Missouri Human Rights Act.  In her Petition, Ingraham named UBS Financial and the individual harasser/retaliator USB Financial Manager Jay Degoler, an indispensable party.  (Ex. 1).

## III.  ARGUMENT

**UBS'S Preemptive Strike,Asking This Court To Prejudge UBS's Non-Liability To Ingraham Should Be DismissedOr Stayed Pending The Outcome Of Ingraham's Pending Missouri State Court Action**

A federal court is not obligated to exercise jurisdiction over a declaratory judgment action and has full discretion to dismiss. ***Wilton v. Seven Falls Co.***, 515 U.S. 277, 288 (1995); 28 U.S.C. § 2201; ***Sprint Corp. v. Aerotel, Ltd.***, No. 99-2547-JWL, 2000 WL 382031, at * 2 (D. Kan. Mar.17, 2000); ***Allstate Property and Cas. Ins. Co. v. Salazar-Castro***, 2009 WL 997157, 1 (D. Kan., 2009).  "[I]n the declaratory judgment context, . . . . jurisdiction yields to considerations of practicality and wise judicial administration." ***Wilton***, 515 U.S. at 288; also see ***Assurance Co. of America v. Women's Care, P.A.***, 2009 WL 1424490, 3 (D. Kan., 2009).

The *Brillhardt* doctrine requires this Court to examine "the scope of the pending state court proceeding and the nature of the defenses open there . . . . This inquiry, in turn, entails consideration of whether all parties and interests can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding." ***Brillhardt v. Excess Insurance Co. of America***, 316 U.S. at 495. (Dismissing federal declaratory action in favor of pending parallel state court proceeding).  Here, as in ***Brillhardt***, defenses are wide open for UBS, and without dispute the interests of all parties can satisfactorily be adjudicated in state court proceedings.

The Supreme Court has directed that, unlike other causes of action,

> [T]he question for a district court presented with a suit under the Declaratory Judgment Act . . . is whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in the state court.

***Wilton***, 515 U.S., at 282, quoting ***Brillhardt***, 316 U.S., at 495.  The Supreme Court in ***Wilton*** affirmed the district court's stay of the DJ action — even though the DJ action (as here) was

9

filed <u>before</u> the state court action.

This Court observed in **_Buchanan_** that federal courts have uniformly concluded that declaratory relief  is <u>not</u> appropriate to "prejudge" liability for tort claims. <u>See</u>, <u>e.g.</u>, **_Buchanan v. Greene_**, 1998 WL 184448, 1 (D. Kan., 1998) (Vratil, J.) citing 28 U.S.C. § 2201; and citing **_Cunningham Bros. v. Bail_**, 407 F.2d 1165,1167 (7th Cir.1969); <u>see also</u>  **_United Ins. Co. of America v. Harris_**, 939 F. Supp. 1527, 1534-35 (M.D. Ala.1996); **_Friedman v. Geller_**, 925 F. Supp. 611, 613 (E.D. Wis.1996); **_Douglas v. Don King Prods., Inc._**, 736 F. Supp. 223, 225 (D. Nev.1990).[3]

Indeed the very purpose of the Declaratory Judgment Act is <u>not</u> present here:

> The primary purpose of the Act is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.

**_Buchanan_**, 1998 WL 184448 at 2.  What this Court found off kilter in **_Buchanan_**, in terms of the primary purpose of the Declaratory Judgment Act, is also UBS's downfall here (<u>Id</u>. at 2):

> **Similarly, in this case, any damages have already accrued.  The principal issue is the determination of liability for past conduct and an assignment of damages, if necessary.**  (bold added).

The 10th Circuit and this District evaluate five factors that must be weighed by a trial judge when deciding whether to hear a declaratory judgment action:

(1)     Whether a declaratory action would settle the controversy;

(2)     Whether it would serve a useful purpose in clarifying the legal relations at issue;

---

[3] Although dismissal or stay is proper for many reasons, it is interesting that the Missouri Supreme Court decision that established the Constitutional right to jury trial of MHRA claims, compared them to the "form of action now commonly referred to categorically as torts . . . ." **_State ex rel. Diehl v. O'Malley_**, 95 S.W.3d 82 (Mo. banc 2003), at 86-88, including n. 9.

(3)     Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata";

(4)     Whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5)     Whether there is an alternative remedy which is better or more effective.

**_Buchanan_**, 1998 WL 184448 at 1-2.  Here, all five factors tilt heavily towards dismissal (or stay) in favor of adjudication of the pending Missouri State Court action.

### 1.     A Declaratory Action Will Not Settle The Controversy

Without a doubt, this declaratory judgment action cannot, and will <u>not</u> settle this entire controversy.  For starters, Jay Degoler, the individual harasser, is not even a party to this action.  Ingraham's claims against him will not be settled by this suit, but will require adjudication in her pending state court lawsuit.  Unlike the preemptive action UBS attempts, "the claims **of all parties** in interest can satisfactorily be adjudicated in that proceeding." (bold added) **_Brillhardt_**, 316 U.S., at 495; <u>see also</u> **_Cincinnati Indemnity Co. v. A&K Construction Co._**, 542 F.3d 623, 625 (8th Cir. 2008).

Most importantly, as this Court held in **_Buchanan_**, it is <u>no</u> solution for UBS to try to argue that Ingraham should be **forced** to counterclaim against UBS in this Court, and **forced** to add DeGoler.  As held in **_Buchanan_** (at *2):

> Defendant [Ingraham here] has already asserted his [her] claims in Arizona [Missouri] . . . however, where those other parties are named as defendants and would not have to be added.

The situation here is **procedurally identical** to the procedural posture in **_Buchanan_**.

### 2.     UBS'S Declaratory Action Will Not Clarify Legal Relations.  Instead, This Is A Fact-Dependent Dispute Where UBS Improperly Seeks A Prejudgment Of Non-Liability For Damages Already Incurred

As this Court held in **_Buchanan_** (at *2):

> The Court agrees that the Declaratory Judgment Act was primarily
> intended to settle rights where a violation of those rights had not
> yet occurred.

Here, UBS's declaratory action does not seek to "clarify legal relations."  Rather, UBS is asking

this Court to do exactly what it refused to do in **_Buchanan_**:  "[p]rejudge key factual and legal

issues" raised in the state lawsuit.  Id. at *2.  Exactly like **_Buchanan_**: "The principal issue is the

determination of liability for past conduct and an assignment of damages, if necessary."  (Id. at

1).  Finally, just like this Court held in **_Buchanan_**:  "The pending lawsuit [in Missouri] provides

a superior vehicle for determining the consequences of legal breaches which are _fait accompli_ at

this time."  Id. at 3 (bold added).

Other courts agree:  "Declaratory judgment is inappropriate solely to adjudicate past

conduct . . . . Nor is declaratory judgment meant simply to proclaim that one party is liable to

another."  **_Corliss v. O'Brien_**, 200 Fed. Appx., 80, 84 (3rd Cir. 2006), citing **_Gruntal & Co., Inc._**

**_v. Steinberg_**, 837 F. Supp. 85, 89 (D.N.J. 1993) and **_Loveladies Harbor, Inc. v. United States_**, 27

F.3d 1545, 1553-54 (Fed. Cir.1994).  The Supreme Court warned decades ago against the

distortion of the Declaratory Judgment Act exemplified by a putative defendant's preemptive

lawsuit:

> To sanction suits for declaratory relief as within the jurisdiction of
> the District Courts merely because, as in this case, artful pleading
> anticipates a defense based on federal law would contravene the
> whole trend of jurisdictional legislation by Congress, disregard the
> effective functioning of the federal judicial system and distort the
> limited procedural purpose of the Declaratory Judgment Act.

**_Skelly Oil Co. el al. v. Phillips Petroleum Co_**., 339 U.S. 667, 673-74 (1950); see **_Developments_**

**_in the Law —Declaratory Judgments —1941-1949_**, 62 Harv. L. Rev. 787, 802-03 (1949).  This

declaratory action turns declaratory relief upside down, defeats its limited purpose and does not

"clarify legal relations."

Rather, UBS is asking this Court to resolve state law questions of liability for past damages arising out of complex factual allegations of discrimination, harassment and retaliation — all of which is <u>not</u> intended to be handled by declaratory relief.  Thus, this Court, like in ***Buchanan*** and previously cited case law, should dismiss (or stay) UBS's declaratory action because it will not clarify legal relations.

### 3.    UBS'S Declaratory Action "Smacks" Of  Disfavored "Procedural Fencing"

This factor weighs <u>all</u> Ingraham's way.  UBS simply beat Ingraham to a courthouse — hoping to force its choice of a federal forum on Ingraham, despite her rightful legal choice to litigate her Missouri statutory claims in Missouri state courts.  As in ***Wilton*** and ***Buchanan***, the fact UBS won the race to a courthouse carries <u>no</u> weight in favor of UBS.[4]

Federal courts unabashedly recognize that the hidden purpose behind many declaratory judgment actions filed in federal court is forum shopping —  referred to in case law as "procedural fencing" and/or "back-door removal."  Therefore, courts <u>often</u> disregard who filed first and look rather at the nature of the issues — particularly whether a pending state court action involves the same issues and are governed **solely** under state law.  Here those fact-bound factors weigh heavily in favor of dismissal or stay.  <u>See</u> ***Beach Cove Assoc. v. United States Fire Ins. Co.***, 903 F. Supp. 959 (D.S.C. 1995) Federal courts repeatedly have held that "federal

---

[4]  A general, non-rigid "first-to-file" rule is used when two duplicative federal lawsuits are filed in separate federal courts.  <u>See</u> <u>e.g.</u>  ***Nacogdoches Oil & Gas, L.L.C. v. Leading Solutions, Inc.***, 2007 WL 2402723, 2 (D. Kan., 2007).  Even then, if the first-filed action "is a declaratory judgment filed for the purpose of anticipating litigation on the same issues the court may decline to follow the rule and dismiss the action." <u>Id</u>. at 3, citing ***Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.***, 189 F.3d 477 (10th Cir.1999); <u>also see</u> ***Graceland v. Intellectual Equities***, 942 F. Supp. 1404, 1406 (D. Kan.1996).

declaratory judgment is not a prize to the winner of a race to the courthouse . . ." See ***Perez v. Ledesma***, 401 U.S. 82 (1971); ***Canal Ins. Co. v. Morgan***, 961 F. Supp. 145 (S.D. Miss. 1996) (same); ***Fireman'sFundIns. Co. v. Chris-Craft Indus., Inc.***, 932 F. Supp. 618 (S.D.N.Y. 1996) (dismissing the declaratory judgment action even though filed before the state action).

As this Court held in ***Buchanan v. Greene***, so also this case "**smacks of 'procedural fencing.'**" ***Buchanan***, 1998 WL 184448 at 3 (bold added).  UBS won the race to a courthouse. However, "that race does not necessarily go to the first to file, when other factors favor giving priority to the later-filed action."  ***Mid-Continent Cas. Co. v. Southeast Kansas Independent Living Resource Center, Inc***., 2005 WL 3240843 citing ***Graceland*** at 1405.  that is the case here.

In ***Mid-Continent Cas. Co. v. Southeast Kansas Independent Living Resource Center, Inc.***, the District Court of Kansas dismissed a declaratory action as preemptive, because it "appears to be a reaction to the imminent filing of the state court case. Therefore, we do not place a priority upon the fact that plaintiff filed this action before defendants filed the state court action." 2005 WL 3240843 (D. Kan., 2005);  see ***American Family Mutual Ins. Co. v. Crapo***, 1994 WL 373889 (D. Kan. 6/22/1994) (citing ***Continental Cas. Co. v. Robsac Indus.***, 947 F.2d 1367, 1372 (9th Cir.1991); ***Federal Ins. Co. v. May Dep't Stores Co.***, 808 F. Supp. 347, 350 (S.D.N.Y.1992)).

In ***St. Paul Fire & Marine Ins. Co. v. Runyon***, 53 F.3d 1167 (10th Cir. 1995), ***St. Paul*** knowingly filed its federal suit one day before ***Runyon*** intended to file his state court contract action. Nonetheless, the 10th Circuit affirmed abstention, holding that a district court may decline to hear a declaratory judgment action if it determines — as should happen here — that the plaintiff is using the action for "procedural fencing." Id. at 1170.

14

Likewise, in ***Great Lakes Dredge & Dock Co. v. Ebanks***, 870 F. Supp. 1112 (S.D. Ga. 1994), the Court dismissed the declaratory action, finding that the concurrent state action would address all issues sought to be reviewed in federal court. The Court held that declaratory judgment was filed as a means of "**forum shopping**."  The Court stated:

> In considering this factor, however, it is not necessary for the evidence to establish conclusively forum shopping. The evidence should be sufficient to suggest such behavior.

Id. at 1118.  That suggestion is strong here.  The Court also held, "Accordingly, if Great Lakes is allowed to proceed in federal court…it has accomplished 'back door' removal." Id. at 1118.

Also see *Wilton*, 515 U.S. at 280 (Supreme Court affirmed district court's stay of federal declaratory judgment lawsuit even though it was filed before a state court lawsuit seeking coverage); ***American States Insurance Co.***, 2008 U.S. Dist. LEXIS, at *14-15;  ***Huth v. The Hartford Insurance Co. of the Midwest***, 298 F.3d 800, 804 (9th Cir. 2002) (fact that the federal declaratory judgment action plaintiff  "**won the race to the courthouse by several days does not place it in a preferred position**") (bold added).

Ingraham's MCHR's Notice of Right to Sue is dated September 22, 2009.  (See Ex. 7, MCHR Notice of Right to Sue).  Thereafter, within **2 days** (September 24, 2009), UBS filed this declaratory action against Ingraham in blatantly anticipatory fashion.  It was not until September 29, 2009 that the EEOC issued its Notice of Right to Sue. (See Ex. 8, EEOC Notice of Right to Sue).  Such an anticipatory race to the courthouse destroys the spirit underlying declaratory relief and justifies declining to proceed.  See ***Buchanan***, 1998 WL 184448 at 2; ***Mid-Continent Cas. Co.***, 2005 WL 3240843 (dismissing declaratory action as an inappropriate preemptive suit).  This case is procedurally identical to ***Buchanan*** and ***Mid-Continent Casualty Co.***.

In short, because all other factors point towards giving priority to the later filed Missouri

state court action, this Court should dismiss or stay UBS's declaratory action in favor of the parallel and pending Missouri state court action.

4. **UBS'S Declaratory Action Encroaches Upon Rightful State Court Jurisdiction And Creates Friction Between Federal And State Court**

This factor also weighs all Ingraham's way. This controversy is a Missouri state court case involving exclusively Missouri law, under the Missouri Human Rights Act ("MHRA"). The fact that UBS's complaint includes a Title VII reference is misplaced. No federal claims will be litigated. Likewise, attempting to force a plaintiff wrongfully terminated in Missouri, to litigate her Missouri statutory claims at a time and in a forum chosen by alleged discriminator, UBS, is not authorized by the Declaratory Judgment Act. 28 U.S.C.§ 2201; ***Buchanan***, ***supra***, discussing ***Cunningham Bros., Inc. v. Bail***, 407 F.2d 1165, 1167 (7th Cir. 1969) which held:

> Declaratory judgment actions are not meant to give a potential defendant a declaration of non-liability before the "natural plaintiff" brings his claims.

It is "the right of a personal injury plaintiff to choose the forum and the time, if at all, to assert his [her] claim." ***Cunningham Bros.***, at 1168 (dismissing declaratory judgment action requesting non-liability as inappropriate for declaratory action). The same logic applies equally for the discrimination plaintiff as for the "personal injury plaintiff." Because Ingraham will proceed with her Jackson County, Missouri litigation, it is beyond debate that this federal action presents many possibilities for inconsistent rulings that could cause friction between the federal and state court. ***Mid-Continent Casualty Co.***, at *3. Thus, this Court should dismiss or stay this action under its discretionary standard.

5. **The Circuit Court Of Jackson County, Missouri Provides A Better And More Effective Remedy**

A district court "should not entertain a declaratory judgment action over which it has

jurisdiction if the same fact-dependent issues are likely to be decided in another pending

proceeding." ***Kunkel v. Cont'l Cas. Co.***, 866 F.2d 1269, 1276 (10th Cir.1989); see ***Brillhardt***,

316 U.S., at 495; also see ***Western Casualty and Surety Co. v. Teel***, 391 F.2d 764, 766 (10th Cir.

1968).  The pending case in Jackson County, Missouri (Case No. 0916-CV36471) is the most

appropriate remedy for this controversy for important reasons:

- All unlawful employment practices and all other occurrences made the basis of this suit were committed within Jackson County, Missouri.

- Jackson County has jurisdiction over the discrimination claims arising under Missouri law, pursuant to MHRA § 213.010, et seq., specifically § 213.111, RSMo.

- The pending and parallel Missouri case includes Jay Degoler, an indispensable party, and will resolve all claims and issues.   Without a doubt, all defendants have wide open rights to fully defend themselves there.

The District Court of Kansas in ***Allstate Property and Cas. Ins. Co. v. Salazar-Castro***,

2009 WL 997157, 3 (D. Kan., 2009) also stayed a declaratory action in favor of a pending state

court action because it involved the same key factual issues also before the state court —

whether the alleged wrongdoer was at fault.  The Court held that where a factual dispute exists, a

stay is proper rather than deciding the issue "in the face of ongoing state proceedings on the

same subject."  Id.  That ruling is in line with ***Buchanan***, and all law cited herein.

The 8th Circuit has found that a district court abused its discretion in refusing to dismiss

or stay a federal declaratory judgment action under similar circumstances.  See ***Capital***

***Indemnity Corp v. Haverfield***, 218 F.3d 872, 875 (8th Cir. 2000) (where "a parallel state court

action was pending that presented the same issues between the same parties . . .[and] both

actions were governed solely by state law,"  the court found the state court "was in the better

position to adjudicate the matter, and permitting this federal action to proceed was unnecessarily

17

duplicative and uneconomical."). <u>Id</u>. <u>Also</u> <u>see</u> ***National Union Fire Ins. Co. v. Karp***, 108 F.3d 17, 22 (2nd Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.").

Here, this declaratory action and Ingraham's Missouri state court case (Case No. 0916-CV36471) indisputably involve the same issues — i.e. the validity (or not) of Ingraham's discrimination/retaliation claims —  all of which are governed solely by Missouri state law.  The issue in both cases is whether UBS Financial and UBS Financial employee, Jay Degoler, did or did not harass, discriminate and retaliate against Ingraham as detailed in her **STATEMENT OF FACTS**.

In addition to including all necessary parties, the pending Missouri state court action is more appropriate to handle this controversy, because **the only law at issue** is Missouri state law under the MHRA.  No federal question is presented.  All unlawful employment practices and all other occurrences made the basis of this suit were committed within Jackson County, Missouri at the UBS Financial office located at 700 West 47th Street, Suite 500, Kansas City, Missouri, 64112 where Ingraham and Degoler were employed.  Jackson County, Missouri has jurisdiction over the discrimination claims arising under Missouri law, pursuant to MHRA § 213.111, RSMo.   Thus, this Court should dismiss or stay UBS's declaratory action in favor of the pending Missouri state court case.

<u>**CONCLUSION**</u>

For all reasons stated herein, Ingraham's fact-specific Missouri state law claims arising under the MHRA  — gender discrimination, sexual harassment and retaliation — are better left to full adjudication in Missouri state court, a putative defendant, seeking a federal court's

18

"declaratory" finding of non-liability when damages have already accrued is <u>not</u> within the true purposes of the Declaratory Judgment Act.

No federal question is involved — only state law.  UBS will not suffer any prejudice by litigating its defenses to Ingraham's statutory discrimination claims in the pending and parallel state court action. The issues and claims are the same.  In fact, the Missouri state court action will more fully adjudicate this controversy, because it includes <u>all</u> parties including Jay Degoler, a necessary and indispensable defendant.

This Court should grant Defendant's Motion to Dismiss or, in the alternative, stay the litigation, pending the outcome of the state court action.


Respectfully Submitted,

THE POPHAM LAW FIRM, P.C.


By:    s/ Dennis E. Egan        
     DENNIS E. EGAN - 27449
712 Broadway, Suite 100
Kansas City, Missouri 64105
Telephone: (816) 221-2288
Telecopier: (816) 221-3999
E-Mail: degan@pophamlaw.com

**ATTORNEY FOR DEFENDANT INGRAHAM**


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 18th day of December, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving opposing counsel.

/s/Dennis Egan