# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | E-12/08-34480 |
| ☐ EEOC | ~~SE 2009-00463~~ |

MISSOURI COMMISSION ON HUMAN RIGHTS                           and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) | |
|---|---|---|
| MRS. CARLA C. INGRAHAM | 913-341-2628 | |
| STREET ADDRESS   CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
| 7605 Mohawk Drive, Prairie Village, KS 66208 | | 8/22/1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (*If more than one list below.*)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| UBS | 500+ | 816-751-5200 |
| STREET ADDRESS   CITY, STATE AND ZIP CODE | | COUNTY |
| 700 West 47th Street, Suite 500, Kansas City, MO 64112 | | Jackson |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| James "Jay" DeGoler | 913-341-2055 |
| STREET ADDRESS   CITY, STATE AND ZIP CODE | COUNTY |
| 8421 Meadow Lane, Leawood, KS 66206 | Johnson |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☒ OTHER (Specify) (Harrassment)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA): 7/2007   LATEST (ALL): 12/2008

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have worked for UBS for 22 years, starting December 14, 1986.

I have been a Registered Client Services Associate ("CSA") since October, 1987.

I have worked as the CSA for Jay DeGoler, First Vice President - Investments since January, 2003. Jay has subjected me to a sexually hostile environment on a continuing basis, as explained on the attached.

**FILED**

DEC  -  2008

MO Commission on Human Rights
Jefferson City Office

(CONTINUED ON THE ATTACHMENT)

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

12/29/08    X *Carla C. Ingraham*
Date        Charging Party (Signature)

SIGNATURE OF COMPLAINANT
*Carla C. Ingraham*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
29th day of December 2008

EEOC FORM 5 (10/94)

My name is Carla Ingraham; I am a Sr. Registered Client Service Associate (CSA) and have worked at UBS for over 22 years. This is the first time I have experienced a working relationship where I was sexually harassed. The sexual harassment has been verbal, nonverbal, physical, and written. It has made my work environment hostile and difficult and I feel like the firm and its management did nothing to protect me. The sexual harassment I have endured is both severe and pervasive. I feel threatened, degraded, and intimidated. I was afraid to say anything at the time of the abuses because Jay DeGoler, the broker I work for, was management; I knew management was aware of these blatant infractions; so I put up with it because I was afraid of retaliation and the loss of my income.

I used to enjoy my job, for instance:

- I am the Branch Retirement Specialist for our marketing area.
- I am one of a select few CSA's designated as a recruit "On-Boarding" volunteer which involves travelling to other branches in the country to assist new Financial Adviser recruits and have traveled to St. Louis to work with a new FA in this capacity.
- I was in charge of the branch's Juvenile Diabetes Fundraising Campaign.
- I was head of the United Way Campaign for our office.

My first memory of ongoing harassment by Jay is the summer of 2007. From that point on – particularly over the past year – the sexual harassment I have put up with has become bolder. At work I have been experiencing fear, intimidation, anxiety attacks, depression, shame, and anger at the degrading remarks and requests made to my face and announced to the office. At home I experience insomnia, nightmares about work, depression, anxiety over coming to the office and being in the office. I was afraid to come forward for fear of losing my job.

- In front of coworkers, Jay frequently called me his "Work Wife" which implies a sexual and subservient relationship. I felt humiliated.

- On September 22, 2008, Jay printed out and placed on my desk without any additional comment, a FoxNews article titled, "Ask the Sexpert: Vibrators, What's all the Buzz About" which explicitly described in detail how a woman achieves orgasm and how she could bring herself to orgasm with a vibrator. (I felt threatened and degraded because I thought he put the article on my desk to suggest I should use a vibrator while fantasizing about him.)

- On September 24th, 2008, at a UBS function, which I was invited to attend as an employee and where alcohol was also provided, Jay got very mad at me for a comment I said to a client in jest about the stock market. After the golfing was over I spoke with the client and he assured me he was fine. I told Jay that the client wasn't angry after all; Jay told me repeatedly in front of other coworkers that I needed to give oral sex to this client and swallow. He said, "You need to go out to the parking lot and give Phil Gudgel a blow job and swallow." I felt like a prostitute.

- On September 24, 2008, at the office, Jay sat down next to me and asked that I massage his back. I felt obligated to massage his back which was performed at my desk out in the open.

- On September 24, 2008, at that same function, one of our clients said he had just finished building a lake house on the Lake of the Ozarks and extended an invitation to the sales assistants to come down for a weekend. I stated that my husband would love to come. Jay said your husband is not invited. This was right in front of the client.

- On September 24, 2008, at that same UBS-sponsored function, Jay made repeated comments to me on the size of his genitals, he said, "I have a tiny dick," over and over again.

- On September 24, 2008, Jay made repeated comments on my breast size and was glaring at my breasts so noticeably that my coworkers commented on it the next day at the office.

- While on a UBS business trip (October 1 & 2, 2008), Jay sent me text messages asking about business and then stated that his traveling companion was "getting laid." Then began relating what another woman at an airport bar was wearing, i.e. bra type, dress, stated that he was going to her town and not coming in the next day. Jay interspersed sexual innuendos during the course of work activities. He was acting as my boss and thus I felt obligated to listen to him and participate.

- On October 31, 2008, Jay made multiple phone calls to my house from his cell phone late at night into the early morning hours while I was in bed with my husband, who in fact wanted to call him to tell him to stop. But I stopped him because I was afraid to have my husband intervene; not knowing what Jay would say or do.

- The corner of the office I work in is referred to as "Party Cove," in reference to a section of the Lake of the Ozarks where sexual activities are publicly displayed. Alcohol is openly stored in Jay's office and I am asked to drink with Jay after market hours. I felt obligated to participate. The managers are aware of this. Sometime in the summer of 2007 John Ellspermann came in Jay's office to say hello while such a "party" was underway. On October 3, 2008, Ed Carroll commented on the camaraderie of "Party Cove" and would like to join in sometime.

- There have been numerous occasions in and out of the office, where I, along with other work colleagues, was questioned about my sexual activity preferences, i. e. what other employees would I rather have sex with, what my sexual fantasies were, if I swallowed semen, if I've ever had "make-up" sex, what sexual positions I preferred, if I would sleep with Dick Jensen (the FA I used to work for before he retired) for a million dollars.

- I was often asked, along with other employees, into his office during work hours to view sexually explicit images of men and woman in e-mails that he didn't want to show as being forwarded to me. There are other e-mails that are sexually harassing that he has forwarded to me as well as the market area manager, John Ellspermann.

- In October, 2007, in Jay's office behind closed doors, Jay and another FA wore fake moustaches provided by another sales assistant, and one of the financial advisors simulated pornographic movie sex moves which I witnessed.

- On a separate occasion, Jay announced from his desk out to the office, "Carla will be giving massages in the nude."

- Jay frequently stands in front of my desk and adjusts his pants zipper.

- When Jay asks a question or wants to view info on my computer screen, instead of waiting for me to turn my monitor, he often comes around my desk and stands directly behind my chair where I'm seated under the premise that he is looking at my computer screen, but actually glancing down my clothes at my breasts.

- At the office, Jay made comments to me about his sex life with his wife, i. e. that he better get laid this weekend.

- While at the office, Jay made repeated comments to me on the large breast size of his hairdresser and the fact that "Janie (his wife) would do handstands if another woman paid attention to him."

- During the course of the work day, Jay uses the word "fuck" to me in the work environment, i.e as a response while looking at a client's performance numbers or responding to a phone message of a client he doesn't want to speak to.

- Jay has also made numerous inappropriate comments to me about Angela Lopez, a CSA in our branch, about how she wants to date him and how attracted she is to him even though she is engaged.

- Jay frequently hugs me and other females in the office, even asking me to phone another sales assistant to come to his office for a hug. I found this intimidating.

- In the winter of 2008, Jay told me that he wanted to rent a limousine for me and other sales assistants, another broker and himself as a Christmas present. I asked another sales assistant what the purpose of the limousine was and she described what she and other brokers had done in the past. The brokers had rented a limousine to go out and party with sales assistants with the understanding that whatever happened in the limousine stayed in the limousine. The sales assistant asked me if I didn't ever get bored with my spouse and want some excitement. She said, "Wouldn't you want to make out with Jay Degoler for 20 minutes?"

This pattern of sexual harassment began before and continued long after UBS required all employees to attend a seminar given by UBS attorneys on what workplace behaviors are not allowed. Just to establish how serious our

office took the issue of harassment in the workplace, they held it at an intimidating, exclusive, member's only country club, which employees like me could never be members of and they even provided alcohol!

On December 11, 2008, at 3:00 PM, Jay called me into his office, closed the door allowing me no escape and proceeded to scream and yell and verbally abuse me because I was leaving for an appointment. I had previously notified my manager of this appointment as required. He screamed that I was taking advantage of him. I was fearful for my physical safety and was emotionally scarred.

On December 16, 2008, I was called in to speak with Tara Krouse and Ed Carroll. This was to discuss my request for the extra days off that exceeded my vacation days. The discussion turned to concerns voiced by Jay. I have always followed the protocol allowed by our branch regarding attendance issues. Ed and Tara confirmed that I should notify my line manager regarding attendance issues, not my brokers. However, I have always notified my brokers and made sure they had backup. They said this sounded like a communications issue and that I should sit down with my brokers and discuss this. I explained that Jay had blown up and yelled and screamed at me on December 11, 2008. Ed told me they would talk to Jay. I asked Ed what he would have done if someone had spoken to his wife in such a manner. He said, "Now this is just me, but I would have told her to report it to her manager." Well I did and three days later I was fired by Jay DeGoler.

On Friday, December 19, 2008, at about 3:00 Jay came to me and asked if I wanted to discuss the "unfortunate incident" that had happened. He then blamed me for his blowing up and then he fired me. I said, "Before you make this decision...." He interrupted me and said for me to "not go there, don't try that." I felt he was threatening me so I would not report his sexual harassment. He then went down to Ed Carroll's office and told him that I was fired. I also went to Ed Carroll's office, passing Jay as he left. Ed told me as we discussed the firing that he had called Jay into the office within thirty minutes of our conversation on December 16 and let him know that it was unacceptable to speak to any employee as he had to me. However no one in management came to me between the time I reported Jay's verbal abuse on December 16 and the day that he fired me. Management did not protect me from retaliation.

On Monday, December 22, 2008, when I arrived in the office Jay continued to conduct business as usual, as if I had never been fired. That day Ed Carroll told me that they were going to ask Jay to take a cooling off period for a week to reconsider firing me. All the concern seemed to be about Jay's future and the firm's.

I used to enjoy my job. I take pride in my job. As a result of being sexually harassed, I don't even want to come in to work anymore, but I still do my job. I can't sleep, am stressed, am starting to put on weight, have anxiety attacks, have bouts of depression, have nightmares, etc. The sexual harassment has affected my relationship with my husband and my family.



**Amended**

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
COMMISSION ON HUMAN RIGHTS
CHARGE OF DISCRIMINATION

Enter Charge Number
☐ FEPA  E12/08-34480
☐ EEOC  28E-2009-00463C

*This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.*

| Missouri Commission on Human Rights and EEOC |||
|---|---|---|
| Name (Indicate Mr., Ms., or Mrs.) Carla C. Ingraham | Date of Birth 8/22/1959 | Home Telephone No. (Include Area Code) 913-341-2628 |
| Street Address 7605 Mohawk Drive | City, State and Zip Code Prairie Village, KS | County Johnson |

**Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship, Committee, State or Local Government Agency who discriminated against me** *(if more than one list below).*

| Name UBS | No. of Employees/Members 500+ | Telephone No. (Include Area Code) 816-751-5200 |
|---|---|---|
| Street Address 700 W 47th St., Suite 500 | City, State and Zip Code Kansas City, MO 64112 | |
| Name James "Jay" DeGoler | No. of Employees/Members n/a | Telephone No. (Include Area Code) 913-341-2055 |
| Street Address 8421 Meadow Lane | City, State and Zip Code Leawood, KS 66206 | |

Cause of Discrimination based on *(Check appropriate box(es))*
☐ Race   ☐ Color   ☒ Sex
☐ National Origin   ☐ Religion   ☐ Age
☐ Disability   ☒ Retaliation   ☒ Other *(Specify)* Sexual Harassment

Date Discrimination took Place *(Month, Day, Year)*
7/07-6/19/09
☒ Continuing Action

The Particulars Are *(If additional space is needed, attach extra sheet(s)):*

PLEASE SEE ATTACHED FOR MY AMENDED CHARGE

**RECEIVED**

**JUN 2 2 2009**

**MCHR-KC**

CYNTHIA ABEND
Notary Public - Notary Seal
State of Missouri
Commissioned for Jackson County
My Commission Expires: November 25, 2012
Commission Number: 08692115

☒ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

X _Carla Ingraham_  6/19/09
Charging Party (Signature)   Date

X _Carla Ingraham_
Signature of Complainant

19th June 2009
Subscribed and sworn to before me this date (Day, month and Year)

MCHR-27 (4-99) AI

(Attachment to Amended Charge, Carla Ingraham v. UBS)

## AMENDED CHARGE OF SEXUAL HARASSMENT AND RETALIATION CHARGE OF CARLA INGRAHAM AGAINST JAY DEGOLER AND UBS FINANCIAL

My name is Carla Ingraham. On December 30, 2008 I filed a Charge of Discrimination regarding the sexual harassment, discrimination and retaliation I had endured at the hands of Jay DeGoler, a stockbroker at UBS Financial. Although I did not describe all of the instances of sexually explicit and inappropriate behavior of Mr. DeGoler, his behavior has included such things as frequently referring to my paper rubber fingertip as my "French tickler"; leaving a copy of an article, "Ask the Sexpert: Vibrators, What's all the Buzz About?" on my desk that described how a woman should bring her self to orgasm with a vibrator; repeatedly made comments about my breast size; told me I needed to give a client oral sex and swallow; repeatedly talked about the size of his genitals; talked about his hairdresser's breast size; announced to the office I would be giving massages in the nude, to relieve stress in the office; talked about his lacking sex life with his wife, and told me he'd "better get laid" on a certain weekend. He also made repeated phone calls to me late at night, after I was in bed. I decided to file the Charge of Discrimination after he retaliated against me and fired me, (from being his "CSA," Client Sales Assistant) after I reported his verbally abusive and threatening behavior to management.

Since I filed the original charge, I have been subjected to increasingly obvious and frequent acts of retaliation, and for that reason, I am filing this Amended Charge.

On approximately December 11, 2008, after I had internally reported the sexual harassment, I was pulled into the office of Jay DeGoler, who screamed at me so violently his face turned beet red and the veins popped out the sides of his head. My husband, Rob, was so concerned about this abusive explosion, and its traumatic effect on me that he went to Jay's office and politely but firmly told him how wrong and offensive it was. He also asked DeGoler to please "take my home phone number off your cell phone, because I'm tired of you calling my home late at night." DeGoler made no attempt to apologize or mitigate the harm from his outburst, nor did he deny that he had been calling me at home late at night. On 12/19, after I reported his abuse, he apologized but only after he blamed me for his outburst. He also told me that I was "fired" and could no longer work for him, which also meant I would no longer receive compensation from him.

On December 31, 2008, a co-worker of mine broke her ankle, and her entire workload was assigned to me. I was assigned 6 Brokers, in addition to the 3 that I still had. No other CSA's had this workload. This meant I had to handle the phones for 9 Brokers and take care of their customers, produce reports, complete transactions, etc. I did not complain but tried to do the best job that I could. I was assured by my new line-manager, Tara Krouse, that they would bring in a temp to alleviate the workload. When the temp was hired, she was instead assigned to

1

another CSA, and when she finished helping that person, assigned to do "special projects" for Ms. Krouse and the Branch Manager.

On Jan 14, 2009 DeGoler's behavior noticeably changed. While he had initially left me alone since his December outburst, he began frequently walking by my desk, not normally his route in the office. This coincided with the conclusion of the so-called "investigation" of my complaint — in which by the UBS investigator told me that her "findings" were revealed that I liked his behavior and it was welcome. I understood this to mean that they were calling me a liar and a slut. During the investigation he had stayed totally away from me, for example he did not use the hallway or doorway near me. He was able to conduct his entire business without coming near me or my work area, and all of a sudden, this changed.

In early February 2009, I was approached by Brokers Zell, Fuller and Dillon, who asked me if I could work for them because I was no longer working for DeGoler. I had assisted them since their assistant was injured in December and they really liked my work. They offered to pay me a percentage of their gross commissions, like DeGoler had. I told them I would really like to do that. This would have replaced some of the income I lost when Jay DeGoler fired me from being his CSA. The Brokers asked Manager Ed Carroll and Line Manager Tara Krouse for my reassignment to work for them and she told them she would "get back to them," but she never did.

On Mar 31, 2009, Broker Zell again approached Tara Krouse about assigning me to his accounts. Krouse told him she is too busy, but would get to it- but again nothing happened. Shortly afterwards, these Brokers moved to a different floor, which provided the perfect opportunity for me to physically be removed from the area of DeGoler. Over six weeks had passed that I could have had the opportunity to replace the income lost when Jay DeGoler fired me from his work. Ironically, when Jay told them to get rid of me—management acted upon that request immediately, but when other brokers wanted me they couldn't make a decision.

On April 8, 2009, I was summoned to an empty office by Tara Krouse. Ms. Krouse told me I was needed for a conference call with Debbie Wheeler, Regional Administrative Officer. In the bare room on the desk, sat a brown envelope, which I was given and asked to open, read, and sign. On the call I was told I was being given a "letter of education." In that meeting I was told by Ms. Wheeler that during the course of UBS's investigation of my complaints of sexual harassment, some issues pertaining to my behavior were discovered. She said that it had been reported that on numerous occasions I had consumed alcohol in the office (which violated the firm's substance abuse policy), and participated in inappropriate e-mails and sexual banter. She also reviewed the firm harassment policy with me and said, "We need to have a positive atmosphere," and also said that I had a responsibility to conduct myself in a professional manner. I asked if I was the only one receiving the letter, but she would not answer that question. Deborah said, "We know that these things can be serious." At the time, I did not ask any other questions but declined to sign it. While I freely admitted that — only along with many other employees and with management participation — I had on occasion consumed alcohol on the property. Management was present and, in fact, invited my participation in this alcohol consumption. It

was expected of me to participate in social office gatherings. I asked for Ms. Wheeler's fax number and she provided it to me, so that I could write a response. I later learned that Mr. DeGoler had also been given a letter. This partially explains his renewed anger and retaliatory actions that soon became obvious.

For two weeks, after this "letter of education" was delivered, Mr. DeGoler stayed completely away from me. Then, all of the sudden on April 23, his behavior changed noticeably. I presumed that DeGoler also received the "letter of education," because DeGoler began acting in new and strange ways towards me. Although he has a separate hallway that doesn't require that he walk anywhere near me, he suddenly began using my hallway. He began staring at me from other Brokers' doorways, while he was conversing with them. He purposely walked close to my desk, and brushed up against it. He began taking a different route to use the elevator and other areas of the office — just so that he had to walk in front of my desk, so that he could stare down at me, or get close to me and my desk. This was unusual, because he had avoided me for months after my initial Charge was filed. Now, instead of avoiding me, he took to stalking and glaring at me, several times a day. I have a list (and other proof) of the dates, times, and behavior that he exhibited towards me, as well as how the intimidation and fear caused me to feel.

In addition, the retaliation by UBS management accelerated, most of it at the hands of my direct supervisor, Tara Krouse, but now including other brokers and the market area manager, John Ellspermann.

On April 20 2009, I did not get paid for one pay period. When I asked twice how could this happen when my timesheet had been given to management for approval, and was I the only employee to experience this problem, I was given no response.

On April 21, 2009, Tara Krouse told me I was being assigned to Broker Janet Groves, along with my current assignments to John Spangler, Bill Strumillo and Jack Austin. Janet is a very good friend of Jay DeGoler. I told her I would be glad to work for Janet, and asked if Janet would pay me, and she assured me that I would. JohnSpangler had been paying me for the previous years that I had worked for him.

On April 23, 2009, Tara Krouse asked me to move my desk so a new CSA could see in to her Brokers' offices (they were new to our office). This was never a necessity in the past for a CSA to, "see into the office of the Brokers," but I did not complain. I stopped what I was doing, and dropped everything to accommodate the request, and move all my electronics, supplies and desk, (even though this put me in his direct path and provided opportunity for DeGoler to come within inches of me, which began to occur at a pace of alarming frequency).

Also on April 23, 2009, UBS laid off the switchboard operator and assigned the coverage of the switchboard to me and others. For some reason I was given twice the switchboard assignment time as the others, even though I had the most seniority of the CSAs. I complained to Operations manager Erin Murphy, and the schedule was changed.

3

On April 24, UBS, in a letter to my counsel, stated that I had not been "singled out" when I was given the "letter of education" but refused to disclose if anyone else had been given one. They also said they were open to exploring a "resolution" of my charge.

On April 30, after a very rough week of being followed and glared at by DeGoler, I become physically ill at the office. That day Jay DeGoler had followed me around the office, for no reason — I had no business with him any longer, and I had to start hiding from him. That day, another employee saw him as he came searching for me. I finally went home sick and called my lawyer. My lawyer notified UBS that the continuing retaliation was making me sick, and asked them to stop it immediately. From 4/20-4/30, Jay DeGoler had been increasingly finding reasons to be near me multiple times a day, sometimes only minutes apart. He had been staring at me from other Brokers' doorways, sweeping by desk, and brushing up against it-- even though he had no reason to even be walking near my desk. After my attorney notified UBS legal counsel and asked them to get DeGoler to stop, they placed me on administrative leave, so that they could "investigate" my claims of retaliation. They also suggested we conduct a mediation, at their expense, outside of MCHR, to expedite things.

On May 6, 2009, at UBS's request, I met with the UBS investigator from HR who interviewed me (in an open hotel area) about my complaints of retaliation/harassment. It was a most unusual "investigation" inasmuch as he openly said he had very little background information on my what had led to my recent claims of retaliation and stalking by DeGoler. According to UBS counsel, this investigation, "turned up nothing."

On May 7, 2009 my attorney, Dennis Egan, at the request of UBS counsel, asked that I be moved so that DeGoler would no longer be near me. I had previously requested they move DeGoler (but was told "that would never happen"). Moving me to another location would give DeGoler no reason to be walking nearby, and hopefully reduce his constant walking by and glaring behavior. This request was denied, even though UBS made the initial offer to move me.

At the time they sent me out on leave, UBS's attorney asked if we would participate in a "outside" mediation. Earlier there were discussions about mediating through the MCHR, but we agreed to have a private mediation instead. We agreed to participate, we agreed to John Phillips, and they asked for a demand, although we had previously provided a demand. The date for the mediation selected. Two days before the scheduled mediation, UBS backed out. They told my attorney I was expected back to work the following Monday.

At the time UBS withdrew its participation in the mediation, UBS told my counsel that it has evidence that I had allowed a Broker to fondle my breasts (allegedly on a previous occasion, but did not provide a date). Of course, this is a completely false accusation.

On May 18, 2009, I returned to work from administrative leave, and was called into meetings with Tara Krouse twice *in one day*. The first time I met with Ed Carroll, Branch Manager, and Tara. Tara said the purpose of the meeting was "just so that we would be on the same page". She said that I would continue to work for Janet Groves (I was just assigned to her

4

on 4/22) and John Spangler. She also said that since my other 2 brokers were retiring later this year and their clients are being bought by Jay DeGoler, they will be reassigned to Jeanie Wooten, another CSA. I was not given any new Brokers to replace them so the first day back from administrative leave, a significant portion of my income was taken from me.

Later that same day I was called unexpectedly into <u>another</u> meeting with the 2 remaining brokers: Janet Groves and John Spangler, with Tara Krouse. They were clearly upset that I had been out on leave, and suddenly returned to work. They also said they did not know that I was coming back, and that it was very disruptive for me to be gone. They said they needed me to be there if I was going to work for them. At the conclusion of the meeting I was advised that Janet would not pay me and Spangler would no longer be paying me. When I asked, John said, "No, everything is so tense around here", and because " The support wasn't there...and it was very confusing, as a broker," Janet said. Janet refused to pay me for working for her and John declared he was not going to pay me any longer. Janet said no –they were not going to pay me, "until we find out if it's worth it". Spangler and Groves are college buddies of DeGoler's. I asked why they suddenly were not willing to pay me and Janet Groves replied, "*We were told we shouldn't pay you.*" I am sure that meant they were "told" by management and/or HR. Krouse said the branch would *temporarily* take on Spangler's share. In conclusion Janet said "I hope you want to be here", implying that I took the leave as some type of vacation or that it was my idea. In my entire 23 years of service to the firm, this was the first time this had happened to me.

On May 19, my husband came to the office to pick me up, as usual. I have worked in this office 23 years, and my husband (who is also a client of UBS) knows most everyone in the office and frequently comes by to pick me up or have lunch with me. This was my second day back from leave. When my husband arrived he saw manager John Ellspermann, who stopped dead in his tracks, and didn't say a word. Shortly afterwards Ellspermann sent an email to the office stating there was a <u>new</u>, "branch policy" to the effect that, "we cannot have friends or family members unescorted in the office" and even when escorted, they must be only be present in "discreet and necessary areas" and in the presence of a Branch employee. From now on, family members must wait in the reception area for the employee. This has never been the policy at UBS and is in contrast to corporate policy <u>and</u> was in direct response to my husband's presence in the office — which was always OK <u>before</u> I filed my charge of discrimination. My husband is a client of this UBS office, and was nothing but friendly and cordial during his visit, as he always is. Later, my coworkers told me this new policy was in direct response to my husband's visit that day.

On May 21, I was called into meeting with Tara Krouse and John Ellspermann, our new market manager, for a "quick question," according to Tara. Ellspermann asked if the beer and snacks they found in a file cabinet (in an area I shared with several others) were mine. I told them, "No," those cabinets were not mine, and I did not use them. I had been gone from this area since December 2008, and two employees had sat in that area since that time, so I had no idea why they thought the beer was mine. I told them the beer was not mine. They seemed surprised by my response and said unconvincingly that were "just checking" because they didn't want to throw them away if they were mine. They did not call anyone else into a meeting to inquire about the beer, to my knowledge.

     On May 22, 2009, after coming out of the restroom, I was yelled at by Janet Groves, and accused of being away from desk 30 minutes, without notifying her. I have proof that I had not been away that long, because I left my desk to take a call from family and it and was only 17 minutes. This was humiliating as she had yelled at me in front of other employees. It was clear she has no respect for me and felt she could treat me any way she wanted, now with full support of management.

     On May 28 at 9:53 a.m., I was called into Tara's office once again. This time I was accused of violating the firm's confidentiality policy by taking photos in the office. I was not taking photos but was reviewing some videos I had stored on my camera. I was told I could no longer bring my camera to the office. I asked if other employees are being given this new policy too, or just me. I received no response. Other employees have, and use their cameras and camera cell phones at the office. Only a couple of days ago, another UBS employee was walking through the office looking at her camera as she walked down the hall, (Jackie Goetting, on Wednesday, June 17), while a UBS attorney warned me that if I did it again, I would be terminated.

     On June 5, I was called into Krouse's office and accused of using my having my cell phone ringer on, as well as using the cell phone and texting at work. All the employees use their cell phones at work, or have their ringers on, but was told that was not my concern. There is no policy against this. No new policy on the use of cell phones or cameras at work have been distributed since I was reprimanded for using them, nor have other employees been told they cannot use them, only me. Obviously, I am being singled out for oppressive surveillance and "Carla-only" made-up rules.

     I am the 2nd most senior ranking CSA (Client Service Assistant) at this UBS branch. In the meeting where I was told I was being put "on probation" when I was assigned to new Brokers Janet Groves and Jack Spangler I was told, "because there's a lot of tension in the air, and ….we don't like the way this is going". In response to that, I asked for one example of something I have done wrong, to which no one replied. The other Broker told me in the meeting that they were doing this because "you say you don't want to come by my office" (which is located next to Mr. DeGoler), but that Broker had never asked me to come down there before. He always came to my desk for what he needed.

     On Friday June 19, I was once again called in to meet with Tara Krouse, Branch Manager Ed Carroll, and Gaye Thurston, Client Relations Manager from Weekhawken, New Jersey (on the speaker phone. They wanted to know if I was taking photos, or using a tape recorder, and then they searched my desk and handbag. I told them that it is obvious that I am being watched targeted and asked by whom? I believe this was Jay DeGoler as he has been frequenting the office across from me the past few two days. Today he sat in an office across from me, feigning reading a paper, but frequently watching me. Is this ever going to stop?

     The retaliation that has occurred is in direct response to my complaints of sexual harassment and filing of a charge of discrimination, which is strictly prohibited by the Code of

Conduct and policies set forth in UBS Personnel Handbook. The acts of retaliation against me, since I filed the Charge for Sexual Harassment, have only increased in frequency, and worsened since that time. This retaliation has resulted in a considerable loss of income to me, not to mention the humiliation and stress I am enduring on a daily basis. The scrutiny and monitoring that I am enduring is unprecedented in this office. I have been a dedicated and loyal professional to this firm for 23 years and do not deserve this kind of treatment. The frequent and oppressive reprimands are nothing but retaliation. The "policies" they are setting for me only apply to me-- none of these have been imposed on the rest of the employees.

The firm policy allows for employees to conduct personal business while at work. In those meetings where I was reprimanded, I repeatedly asked if the other employees were given the new policies about, "don't' take your camera to work" or "turn off your cell phone ringer," and no response has been provided to me.

Why are these things happening to me? Not because I am not a good employee- I always volunteer to help out, train people, fill in, etc., especially in the past year when we have had cutbacks and layoffs. I believe it is for only one reason, because I complained about the sexual harassment, and retaliation of Jay DeGoler, one of their most successful brokers. I have never been lacking in my performance, not before and not even through this litany of retaliation. Since I became a senior CSA, I have always been assigned to the top performing brokers, who needed my expertise the most. I am emotionally drained and exhausted after what they've put me through recently, and I ask for your help in providing an end to this situation. I believe they are trying to either find some reason to fire me, or wear me down so that I will resign.

**Amended**

| MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS COMMISSION ON HUMAN RIGHTS **CHARGE OF DISCRIMINATION** | Enter Charge Number<br>☐ FEPA E12/08-34480<br>☐ EEOC 28E-2009-00463C |

*This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.*

## Missouri Commission on Human Rights and EEOC

| Name (Indicate Mr., Ms., or Mrs.)<br>Carla C. Ingraham | Date of Birth<br>8/22/1959 | Home Telephone No. (Include Area Code)<br>913-341-2628 |
| Street Address<br>7605 Mohawk Drive | City, State and Zip Code<br>Prairie Village, KS | County<br>Johnson |

**Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship, Committee, State or Local Government Agency who discriminated against me** *(if more than one list below).*

| Name<br>UBS | No. of Employees/Members<br>500+ | Telephone No. (Include Area Code)<br>816-751-5200 |
| Street Address<br>700 W 47th St., Suite 500 | City, State and Zip Code<br>Kansas City, MO 64112 | |
| Name<br>James "Jay" DeGoler | No. of Employees/Members<br>n/a | Telephone No. (Include Area Code)<br>913-341-2055 |
| Street Address<br>8421 Meadow Lane | City, State and Zip Code<br>Leawood, KS 66206 | |

Cause of Discrimination based on *(Check appropriate box(es))* | Date Discrimination took Place *(Month, Day, Year)*

| ☐ Race | ☐ Color | ☐ Sex | |
| ☐ National Origin | ☐ Religion | ☐ Age | 7/02/2009 |
| ☐ Disability | ☒ Retaliation | ☐ Other *(Specify)* Sexual Harassment | ☐ Continuing Action |

The Particulars Are *(If additional space is needed, attach extra sheet(s))*:

On June 19, I filed an Amended Charge of Discrimination for the retaliation that occurred filing my original Charge of Discrimination last December. That same day my attorney faxed a copy of the Amended Charge to counsel for my employer. Counsel for my employer replied with a letter acknowledging reciept of the Amended Charge on June 24, 2009.

One week later, I was terminated.

On July 1, 2009, I was called into a meeting with Tara Krouse, my line manager. Also present in the conference room was John Ellspermann, our new Branch Manager. Mr. Ellspermann had been demoted from Market Area Manager after my original Charge of Discrimination was filed. In the conference room there was a phone call on the speaker phone with the HR Representative from UBS Corporate Office in New Jersey. She told me that I was told that I was being terminated, due to " the investigation" in which they had determined I had violated 'integrity and truthfulness" policies of the Company.. I asked what they meant, and also asked what I had done that allegedly violated those policies. No response was given to me. I asked what "investigation", because I was not aware of any investigation of me, and was given no response to that question. I was terminated immediately, without notice or severance pay, and escorted out of the office.

My termination was the final act of retaliation and was in direct response to the filing of my Amended Charge of Discrimination. The Amended Charge reported the extensive retaliation to which I had been subjected since filing a sexual harassment Charge in December 2008. I have been a loyal, valuable, and dedicated employee of UBS for 23 years and do not deserve to have my career end in this manner.

☐ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – (When necessary to meet State and Local Requirements)

CYNTHIA ABEND
Notary Public - Notary Seal
State of Missouri
Commissioned for Jackson County
My Commission Expires: November 25, 2012
Commission Number: 08691106

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

*Carla Ingraham*  7/16/09
Charging Party (Signature)   Date

X *Carla Ingraham*
Signature of Complainant

16th day of July, 2009
Subscribed and sworn to before me this date (Day, month and Year)

MCHR-27 (4-99) AI



MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
COMMISSION ON HUMAN RIGHTS
CHARGE OF DISCRIMINATION

| Enter Charge Number |
| --- |
| ☐ FEPA |
| ☐ EEOC |

This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.

| Missouri Commission on Human Rights and EEOC ||||
| --- | --- | --- | --- |
| Name (Indicate Mr., Ms., or Mrs.) Carla C. Ingraham || Date of Birth 8/22/1959 | Home Telephone No. (Include Area Code) 913-341-2628 |
| Street Address 7605 Mohawk Drive || City, State and Zip Code Prairie Village, KS | County Johnson |

| Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship, Committee, State or Local Government Agency who discriminated against me (if more than one list below). |||
| --- | --- | --- |
| Name UBS | No. of Employees/Members 500+ | Telephone No. (Include Area Code) 816-751-5200 |
| Street Address 700 W 47th St., Suite 500 | City, State and Zip Code Kansas City, MO 64112 ||
| Name James "Jay" DeGoler | No. of Employees/Members n/a | Telephone No. (Include Area Code) 913-341-2055 |
| Street Address 8421 Meadow Lane | City, State and Zip Code Leawood, KS 66206 ||

| Cause of Discrimination based on (Check appropriate box(es)) ||| Date Discrimination took Place (Month, Day, Year) |
| --- | --- | --- | --- |
| ☐ Race | ☐ Color | ☐ Sex | |
| ☐ National Origin | ☐ Religion | ☐ Age | 7/01/2009 |
| ☐ Disability | XX☐ Retaliation | ☒ Other (Specify) Sexual Harassment | ☐ Continuing Action |

The Particulars Are:

On June 19, I filed an Amended Charge of Discrimination for the retaliation that occurred after filing my original Charge of Discrimination in December 2008. That same day my attorney faxed a copy of the Amended Charge to counsel for my employer. Counsel for my employer replied with a letter acknowledging receipt of the Amended Charge on June 24, 2009.

One week later, I was terminated.

On July 1, 2009, at approximately 9:20 a.m., I was called into a meeting with Tara Krouse, my line manager. Also present in Tara's office was Ed Carroll, former branch manager. In Tara's office, on the speaker phone was someone identified as Teresa Leddy, an HR Representative from UBS Corporate Office in New Jersey. Tara told me that I was being terminated, due to "the investigation" (of me) in which they had determined I had violated "integrity and truthfulness" policies of the Company. I repeatedly asked for details and what they meant specifically, and also asked what I had done that allegedly violated those policies. "We're not going to discuss anything further at this time." was Tara's response. I asked, "What investigation?", because I was never informed of any investigation of me, and was given no direct response to that question, either. I was terminated immediately, without notice or severance pay or advice as to my medical benefits, final pay, pension, rights to unemployment insurance, etc, and was immediately escorted out of the office.

My termination was the final act of retaliation and was in direct response to the filing of my Amended Charge of Discrimination, and my earlier complaints. The Amended Charge reported the extensive retaliation, to which I had been subjected since filing a sexual harassment Charge in December 2008. I have been a loyal, valuable, and dedicated employee of UBS for 23 years and do not deserve to have my career end in this humiliating and devastating manner.

[Notary Seal: CYNTHIA ABEND, Notary Public - Notary Seal, State of Missouri, Jackson County, My Commission Expires September 25, 2012, Commission Number: 08691106]

☐ I want this charge filed with both the EEOC and the Missouri Commission on Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

X _____  8/12/09
Charging Party (Signature)           Date

X _____
Signature of Complainant      8/12/09
Subscribed and sworn to before me this date (Day, month and Year)